GEORGE W. MARVIN

*v.*

ELIZA COLLINS.

*Filed at Ottawa May 14, 1881.*

1. CHANCERY—*necessity of preserving the evidence in support of the decree— and by whom.* In chancery, the party in whose favor the decree granting

relief is rendered, in order to sustain the decree when questioned on error, must preserve the evidence in the case, or the decree must find specific facts that were proved on the hearing. It is not incumbent upon the party *against* whom such a decree is rendered, to preserve the evidence.

2. SAME—*decree must be confined to the case made in the pleadings.* A decree in chancery must be confined to the pleadings. One case can not be made by the bill, and another and different case made by the proofs.

3. DESCENTS—*husband as heir of his wife.* Under the statute of Descents in force in 1866, upon the death of a married woman intestate, seized of real estate, leaving her surviving her husband and her mother, but leaving no child or children, or descendants of child or children, or father, or brothers or sisters, or descendants of them, the husband and the mother of the intestate will take the estate in fee, as heirs, in equal parts, holding as tenants in common. In such case, the title will vest in the heirs immediately upon the death of the person from whom the inheritance comes.

APPEAL from the Circuit Court of Kane county; the Hon. CLARK W. UPTON, Judge, presiding.

The complainant, Eliza Collins, filed her original bill in the circuit court of Kane county, April 22, 1872, which was amended September 7, 1874, stating, among other things, that she was married to Thomas Collins on July 4, 1842, and lived with him until May, 1857; that on February 19, 1858, she obtained a decree of divorce; that on the 3d day of December, 1859, she filed another bill to enforce a former decree in respect to alimony, and during the pendency of the suit submitted the cause to arbitration; that the arbitrators made an award on the 15th day of December, 1860, and that a decree was entered thereon which gave complainant the life use of the homestead in the town of St. Charles, and $50 per year for the support of an infant daughter, and made the same a lien on 120 acres of land, in the town of Virgil,—Collins to have the balance of the property during life, with remainder to the daughter; that if Collins neglected to pay the $50, as decreed, upon filing affidavit execution could issue against Collins for that amount; that Eliza was an only child, born in February, 1849, and resided with her mother until her marriage, March 11, 1866; that Collins died in 1861, owning

200 acres of land, in the town of Virgil, Kane county, and the homestead in St. Charles; that Eliza died in October, 1866, intestate, leaving no heirs of her body; that Eliza married Joseph Desland, but has heard nothing from him since Eliza's death, and believes him dead; that complainant was the guardian of Eliza, before marriage, and supported her, and has received no part of said allowance; that at the February term, 1861, of said circuit court, one Strader obtained judgment against Collins and Collar, and levied upon and sold 160 acres of said land; that execution issued in May, 1861, levy was made May 7, 1861, and sale July 6, 1861; that a deed was made to Seth Marvin on sale, as assignee of certificate of purchase, October 2, 1862, and deed recorded the same day; that Marvin took possession under that deed, and has since had possession; that A. J. Marvin took out letters, with the will annexed, on the estate of Collins, on March 5, 1862, and on October 31, 1862, filed a petition to sell the real estate of Collins to pay debts allowed against the estate; that on January 17, 1863, the administrator, under a decree of the court, sold the said 200 acres of land, the sale aggregating $33, and that complainant was not summoned in the case. Desland was not made a party, the complainant claiming to be the only heir of her daughter, Eliza Desland.

The defendants, Seth and George W. Marvin, answered, admitting all the principal facts, as charged, but deny that Desland, the husband of Eliza, was dead, but allege he was still living, and deny all rights of complainant, as heir of Eliza or otherwise, and set up the purchase of the lands and the making of improvements thereon, of the cost of over $2000, largely in excess of all profits. Seth Marvin, who set up that he had been in possession of the premises under the sheriff's and administrator's deeds since 1863, and had paid all taxes assessed thereon, claimed the bar of the statute of Limitations as to all sums claimed to be due from the defendants, and insisted upon the complainant's *laches* as a bar to all relief sought.

On December 28, 1863, the court made a decree, which recites that all the defendants except Desland had appeared and answered the bill, and that Desland was defaulted for want of appearance and answer, and that all the defendants, except Desland, appeared by their solicitors. The decree finds the marriage of Eliza with Desland, March 11, 1866; that she died intestate and childless in October, 1866, leaving the husband and complainant her only heirs at law; finds the marriage of complainant with Collins, divorce, and death of Collins, as set out in the bill. Also, the sale of land on Strader's execution, and deeds of the sheriff and administrator, of the land to Marvin; finds that the lands in Virgil, except 40 acres, were sold for taxes June 24, 1861, to Hodman, who assigned the certificate of purchase to Seth Marvin, and that the sheriff made Marvin a deed on October 16, 1863, but that the notice for the sale was defective, and conferred no title, and that such deed was no defence to this suit; allows complainant the amount of $270 for the support of Eliza, and decrees it a lien on the 120 acres; that complainant is the legal heir of Eliza, and as against all the defendants, except Desland, the owner in fee simple of the 40 acres not included in the execution sale, and the house and lot in St. Charles; refers the case to the master, to take account of rents, profits, repairs, taxes, etc. The court found a balance of $246.58 against George W. Marvin, for use and occupation.

The suit was brought against George W. Marvin, Andrew J. Marvin, James M. Marvin, Mathew Marvin, Ann Wild, James Randall, Joseph Desland, and the unknown heirs of Seth Marvin, deceased. George W. Marvin alone brings the case here.

Messrs. BOTSFORD, BARRY & RUSSELL, and Mr. SAMUEL RICHOLSON, for the appellant:

The *laches* in this case is such as to prevent equitable relief. The bill shows no excuse for the delay, and the decree

does not find any. The rule has been applied to cases involving a less degree of *laches* than in this case. *Cox* v. *Montgomery*, 36 Ill. 396 ; *Winchell et al.* v. *Edwards et al.* 57 id. 45 ; *Burr* v. *Borden et al.* 61 id. 389 ; *Dempster* v. *West*, 69 id. 613 ; *Munn* v. *Burgess et al.* 70 id. 604 ; *Bush et al.* v. *Sherman*, 80 id. 160.

There is a variance between the bill and the findings of the court. The bill alleges that Eliza died unmarried, and that the complainant is her only heir, and makes no mention of a tax deed being upon the premises. The decree finds that Eliza was married, at the time of her death, to Joseph Desland, and that he survived her, and, with complainant, is one of her legal heirs. It also finds that Seth Marvin has a tax deed to the premises, and finds it invalid.

A party can not make one case by his bill and another by his proofs, but they must correspond, to entitle him to relief in a court of equity. *Tuck* v. *Downing*, 76 Ill. 71 ; *Morris* v. *Tillson*, 81 id. 607 ; *Berger* v. *Peterson*, 78 id. 633 ; *White* v. *Marvin*, 11 id. 361 ; *Rowan* v. *Bowles*, 21 id. 17 ; *Chaffin* v. *Heirs of Kimball*, 23 id. 36 ; *Wise* v. *Twiss*, 54 id. 301.

The decree should conform to the prayer of the bill. There is nothing in the bill or prayer regarding this tax title. *Hall* v. *Towne*, 45 Ill. 493.

Relief not sought for by the bill should not be decreed. *Dodge* v. *Wright*, 48 Ill. 382.

The court finds Joseph Desland, the husband of Eliza, living, and an heir, and having an interest in the 40 acres, yet, by the decree on the master's report, decrees all the rents and profits to complainant.

Mr. A. J. HOPKINS, and Mr. A. G. McDOLE, for the appellee :

As a general rule the plea of *laches* will not be allowed, unless the party making it has some equitable claim, founded on right. Where the statute of Limitations has not run, and no estoppel or acquiescence is shown, a court of equity will

not deny relief on the ground of *laches*. *Platt* v. *Platt*, 58 N. Y. 646; 2 Story's Eq. sec. 1520.

As to the tax deed, the defendants attempted to make title by it, and the court properly decreed it invalid as a defence.

Desland was made a party to the original bill, and brought in by publication, and the bill taken as confessed against him. If there was error in not finding that he was also an heir of Eliza, the plaintiff in error can not call it in question. He can only appeal from such parts of the decree as affect him. *Idley* v. *Idley*, 11 Wend. 227; *Cuyler* v. *Menland*, 6 Paige, 273; Barb. Ch. Pr. 383.

Mr. JUSTICE WALKER delivered the opinion of the Court:

It seems to be conceded that appellee, in February, 1858, was, on her own application, divorced from her husband, Thomas H. Collins. The parties had one child, Eliza Collins, whose care and custody was decreed to appellee, and a decree subsequently rendered, on the 15th of December, 1860, required Collins to pay to appellee annually $50 until Eliza should arrive at twenty-one years of age, or until her marriage before that time. The decree declared a lien on 120 acres of land to secure its payment, and provided that on default of payment execution might issue, and the land be sold for its satisfaction.

Eliza lived with and was supported by her mother from December 15, 1860, until the 11th of March, 1866, when she was married to Joseph Desland. During that time no portion of the annual sum of $50 was paid to appellee. Eliza died in October, 1866, intestate, leaving no heirs of her body. Nothing has been heard of Desland since Eliza's death.

One Strader, at the February term, 1861, of the Kane circuit court, recovered a judgment against Collins for $257, and costs of suit. An execution was issued, and levied on the 120 acres of land, subject to the lien of the decree, and

other lands. They were sold by the sheriff and bid off by Strader, who afterwards assigned the certificate of purchase to one Seth Marvin, and not having been redeemed he obtained a sheriff's deed for the lands. He went into possession under the deed and made improvements, and subsequently died, leaving his heirs in possession.

A. J. Marvin took out letters of administration on the estate of Collins, and debts to about the sum of $1000 were proved up against the estate, and the personal assets being insufficient to satisfy them, he petitioned for and obtained an order of sale of the lands of which Collins died seized, for the payment of debts. The lands were sold on the 17th day of June, 1863, to Seth Marvin, and he received a deed from the administrator for the same lands that had been sold under Strader's execution.

On a hearing, the court found that the sale by the administrator was void, because no notice was served on appellee of the intended application for license to sell these lands for the payment of the debts against Collins' estate. It also found that all of the lands had been sold under the execution in favor of Strader, and a deed made to Seth Marvin under that sale. It also found that appellee and Desland were the only heirs of Eliza, deceased, and that appellee had a lien on the 120 acres of land, for the amount of alimony, of $50 per annum; that she was the owner in fee of one 40 of the 120 acres upon which the lien existed, as against all of the defendants except Desland, and decreed she was entitled to the immediate possession of the 40-acre tract. Also, that a tax title held by Seth Marvin conferred no title on him, and that for the use of the 40-acre tract by the Marvins the defendants pay her $246.58,—the amount found due after deducting improvements and payment of taxes. Defendants bring the case to this court by appeal, and assign various errors on the record.

Appellee has preserved no evidence in the record, and, according to the practice in courts of equity, as announced in

many cases in this court, the party in whose favor the decree granting relief is rendered, to maintain it must preserve the evidence, or the decree must find specific facts that were proved on the hearing. It is not the duty of the party against whom the decree granting relief is rendered to preserve the evidence, as appellee's counsel seem to suppose.

We find no evidence establishing the invalidity of the sale under the execution in favor of Strader, as to the 40 acres which the court finds to belong to appellee, except as to Desland. The court finds the recovery of the judgment against Collins, the date, the amount, that execution was issued, levied, and sale and sheriff's deed to Marvin, and there is nothing to show that he did not acquire title to this as well as to the 80-acre tract. There is no evidence or finding of facts that show that appellee had a superior title to Marvin. He, no doubt, purchased subject to the lien of the alimony; but at the marriage of Eliza it could be a lien for no more than was then due, and such a lien does not, as all know, constitute a fee simple title. It is but a lien, and no more.

There were no allegations in the bill in reference to Marvin's tax title. In fact, the first time it appears in the record is in the decree holding it invalid. In this there was error. The decree must be confined to the pleadings. One case can not be made by the bill, and relief granted on another and different case made by the proofs. There is no case made by the bill or proofs, so far as this record discloses, nor does the finding in the decree state in what respect the notice for judgment was defective. We suppose the decree refers to the notice of the collector, that he would apply for judgment against the land for taxes, but it is not so stated. The decree should have pointed out the specific defect, or a copy of the notice should have been embodied in a certificate of evidence, that it might be seen whether the ruling of the court was correct on that question.

The court found that Desland and appellee were heirs of Eliza, and, so far as the record discloses, correctly. Eliza died intestate, leaving no children, or descendants of a child or children. She, however, left Desland, her husband, and appellee, her mother, surviving her, and under the statute of Descents then in force, the husband became, on her death, invested with one-half of the real estate of which she died seized, and appellee, as her mother, of the other half, and the title vested at once in them on the death of Eliza, nor, as seems to be supposed, would his subsequent death affect his title to these lands. If living, and Eliza was seized of any lands, he still owns them unless he has parted with the title, or has been deprived of it by the administrator's sale, or otherwise. If he died intestate, and he, at the time of his death, held any interest in the lands, that interest descended to his heirs at law. There can be no claim that appellee is such an heir. Then, if any of the land in controversy belonged to Desland and appellee by inheritance, they held it in equal parts, as tenants in common, and each was entitled to one-half of the rents and profits, and it was error to decree the payment of all of them to appellee. If entitled to anything, as the finding of the decree now stands she was entitled to but half of the rents.

As the decree must be reversed, and the cause remanded for further proceedings, it would be useless to consider the exceptions to the master's report, as, on another hearing, the evidence may be different, or it may appear that appellee is not entitled to an account for rents and profits. We will not, therefore, examine the account.

We are of opinion that appellee had a lien on the 120 acres of land for the yearly alimony until paid, and that as it was found, allowed, and ordered to be paid by decree of the court, it was not barred by the statute of Limitations or by *laches.* It was a decree for the payment of money in installments.

There may be other errors in the record, as it now stands, but as the evidence, were it before us, might obviate them, we shall not discuss them on this record.

The decree of the court below is reversed, and the cause remanded for further proceedings.

*Decree reversed.*